# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TERRANCE J. SHAW,<br><br>      Plaintiff,<br>v.<br><br>PAUL S. KEMPER and SERGEANT GUDAL,<br><br>      Defendants. | Case No. 21-CV-636-JPS<br><br>**ORDER** |

  Plaintiff Terrance J. Shaw, who was an inmate at Racine Correctional Institution ("RCI") at the time that he filed his complaint, filed this pro se action under 42 U.S.C. § 1983 alleging that various defendants at RCI violated his constitutional rights. ECF No. 1.[1] Plaintiff has paid the $402 filing fee, but the Court must still screen the complaint. 28 U.S.C. § 1915A ("The Court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."). Plaintiff has also filed a motion to appoint counsel and a motion for a protective order. ECF. No. 7. For the reasons explained below, the Court will deny Plaintiff's motion to appoint counsel and grant the motion for a protective order to the extent that the protective order seeks to restrict access to Plaintiff's medical records. The Court will permit Plaintiff to proceed on his claims as provided herein.

---

[1] Although Plaintiff has since been released from custody, courts "look to the status of the plaintiff at the time he brings his suit" to determine whether the Prison Litigation Reform Act ("PLRA") applies. *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004).

1.  **SCREENING THE COMPLAINT**

    **1.1  Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints

liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 1.2 Plaintiff's Allegations

Plaintiff is an elderly, wheelchair-bound veteran. On the evening of September 5, 2016, Sergeant Gudal ("Gudal") conducted a count of inmates to ensure presence and order. During the count, all inmates must stand up; however, because of Plaintiff's disability, RCI's medical staff gave orders that permitted him to stay in his wheelchair during the count. Nevertheless, when Gudal passed by Plaintiff during the count, he ordered Plaintiff to stand.

Plaintiff informed Gudal of his limitations and of the relevant medical orders. In response, Gudal printed a copy of Plaintiff's "Special Handling Summary" from the previous year and highlighted the portion that stated that Plaintiff only needed the wheelchair for long distances. Plaintiff, in turn, circled an update from 2016 which ordered Plaintiff to use a wheelchair fulltime, indoors.

Gudal was not satisfied and "would not concede that [Plaintiff] in fact could sit in his wheelchair during standing count." ECF No. 1 ¶ 9. Gudal told Plaintiff that he would confirm with the Health Services Unit ("HSU"). Plaintiff alleges that his medical condition is obvious, and he felt unsettled by the exchange. Thus, on September 6, 2016, Plaintiff filed an inmate complaint in which he explained that Gudal, a non-medical staff, had taken it upon himself to interfere with Plaintiff's medical orders, specifically by ordering Plaintiff to stand against medical staff orders. Plaintiff alleges that this interference caused him pain and harm.

On September 12, 2016, inmate complaint examiner Larson returned the complaint and instructed Plaintiff to raise the issue with his unit manager, Kreuger. Larson told Plaintiff to re-file the complaint within 14 days. Thus, on September 13, 2016, Plaintiff wrote to Kreuger and provided a copy of the inmate complaint he filed with Larson.[2] Eventually, Plaintiff successfully re-submitted the complaint, which a subsequent inmate complaint examiner, and later Warden Paul S. Kemper ("Kemper"), affirmed on the basis that "[a] sergeant would not let [Plaintiff] sit in his wheelchair during count." *Id.* ¶¶ 16–17.

On October 14, 2016—the same day that Kemper affirmed the complaint—Plaintiff filed another complaint in which he broadly described the harassment and discrimination that he faced as a disabled person in prison. Indeed, in the time between when Plaintiff submitted his complaint and when Kemper affirmed the decision, Gudal forced Plaintiff to stand four times per day during count. *Id.* ¶ 24. This caused him tremendous pain. Plaintiff's second inmate complaint thus refers to a pattern of inappropriate conduct from RCI staff and alludes to RCI's failure to train its staff on how to handle disabled inmates. RCI staff affirmed this complaint, too. *Id.* ¶¶ 22–23.

### 1.3 Analysis

Plaintiff seeks to proceed on an Eighth Amendment claim for deliberate indifference to serious medical needs against Gudal. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th

---

[2]This paragraph is unclear, but it seems to suggest that Plaintiff had already given Kreuger a copy of the complaint—this appears to be part of RCI's exhaustion process.

Cir. 2005) (quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' – i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)). At this juncture, "knowledge and intent may be pleaded generally (which is to say, in a conclusory fashion), the lack of detail does not permit dismissal." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).

Plaintiff alleges that Gudal acted with deliberate indifference to a serious medical need when he forced Plaintiff to stand during the count even though there were recent orders from medical staff stating that Plaintiff should remain in a wheelchair during the count. Gudal thus knew, from the medical orders and from Plaintiff's presence in a wheelchair, that Plaintiff should not stand during count. Yet, Plaintiff alleges, Gudal forced him to stand anyway—multiple times—despite a serious risk of pain, increased injury, or a fall. Plaintiff has sufficiently stated a claim under the Eighth Amendment for deliberate indifference against Gudal.

Plaintiff's allegations as to the warden, Kemper, in his personal capacity, must be dismissed. It is well settled that "[o]nly persons who cause or participate in the violations are responsible" for the constitutional rights violations. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Plaintiff

Page 5 of 16
Case 2:21-cv-00636-JPS   Filed 05/23/22   Page 5 of 16   Document 9

has not clearly alleged that Kemper had any role in his medical assessment or housing placement.[3]

However, to the extent that Plaintiff sues Kemper in his official capacity for claims under the Americans with Disabilities Act ("ADA") or the Rehabilitation Act ("RA"), those claims may proceed.[4] To state a claim for violations of the ADA, Plaintiff must allege that he is "a qualified individual with a disability, that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such entity, and that the denial or discrimination was by reason of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citations and quotations omitted). The ADA applies to state prisons. *Pa. Dep't of Corr. v. Yeskeey*, 524 U.S. 206, 206 (1998). Relatedly, to state a claim under the RA, Plaintiff must allege that he is "(1) a qualified person (2) with a disability and (3) the [state agency] denied [him] access to a program or activity because of [his] disability." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)). The ADA Title II claim and the Rehabilitation Act claim are "functionally identical." *Wagoner*, 778 F.3d at 592.

At the screening stage, the Court accepts that Plaintiff is a qualified individual with a disability and that Kemper, in his official capacity as Warden of RCI, discriminated against Plaintiff by employing people who forced Plaintiff to stand during the count even though standing posed a

---

[3]Similarly, Plaintiff's attempts to state a claim against Kemper in his official capacity pursuant to *Monell v. City of N.Y. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) also fail. The *Monell* line of cases applies to municipalities, not states—RCI is a state facility, which is protected from suit by the Eleventh Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989).

[4]Congress expressly abrogated state immunity for ADA and RA claims. 42 U.S.C. § 12202; 42 U.S.C. § 2000d-7.

physical hardship and caused Plaintiff significant pain. As a result, Plaintiff was forced to stand four times per day for nearly a month because the officer conducting the count did not make a reasonable accommodation for Plaintiff's disability. Plaintiff's ADA and RA claims against Kemper in his official capacity may proceed.

### 2. MOTION TO APPOINT COUNSEL

As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of a plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When a court recruits a lawyer to represent a pro se party, the lawyer takes the case pro bono. Unlike a lawyer appointed to represent a criminal defendant during his prosecution, who is paid by the government for his work, an attorney who takes a prisoner's civil case pro bono has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system

for lawyers admitted to practice in the District. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Although the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful § 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for pro bono appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent pro se plaintiffs on appeal. *See, e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the pro se appellant); *McCaa*, 893 F.3d at 1029 (same).

Finally, it must be remembered that, when a court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are a court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, a court asks whether the litigant has

made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district court judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, No. 09-cv-90-bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

In this case, Plaintiff has attached emails from several attorneys in the Wisconsin area with civil rights practice, which demonstrate a good faith effort to secure appropriate counsel in this matter. *See* ECF No. 8-1 at 1–6. The Court is satisfied that he has accomplished the first step of the *Pruitt* analysis.

But Plaintiff's request must also succeed on the second *Pruitt* question: whether the difficulty of the case exceeds his capacity to coherently present it. This assessment must be made in light of the particular capabilities and circumstances presented by each pro se litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While a court need not address every concern raised in a motion for appointment of counsel, it must address "those that bear directly" on the individual's capacity to litigate his case. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must be done against the backdrop that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d at

Page 10 of 16
Case 2:21-cv-00636-JPS    Filed 05/23/22    Page 10 of 16    Document 9

656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of § 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Several pronouncements from the Court of Appeals appear to be in tension with this principle. First, the Seventh Circuit notes that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation." *James*, 889 F.3d at 327. It deems the "[a]dvanced phases" to include those from discovery onward. *Id.*; *McCaa*, 893 F.3d at 1032. But nearly every prisoner case proceeds to discovery, as the district court applies exceedingly lenient review during initial screening.

Second, the Seventh Circuit instructs that district courts should evaluate a prisoner's competency irrespective of the involvement of a "jailhouse lawyer." *McCaa*, 893 F.3d at 1033; *Walker v. Price*, No. 17-1345, 2018 WL 3967298, at *5 (7th Cir. Aug. 20, 2018). How courts should do this is not clear. A court rarely knows whether a filing was prepared by the plaintiff or someone helping him. And if a court does know that the plaintiff is receiving help, how can it assess his ability to litigate without knowing which portions of the filings are his work, and which come from the jailhouse lawyer? In *Walker*, the court determined that the inmate's work product decreased in quality after his jailhouse lawyer was transferred to another prison. 2018 WL 3967298, at *6. Yet a savvy prisoner, looking to secure counsel for himself, could do this on purpose, crafting his filings to downplay his own litigation capabilities. A court would have no way to assess whether the inmate is sandbagging it.

Finally, the Court of Appeals indicates that claims involving the state of mind of the defendant, such as those involving deliberate indifference, are particularly complex. *James*, 889 F.3d at 327–28; *McCaa*, 893 F.3d at 1032. Yet a government official's culpable mental state is the foundation for most constitutional claims. Indeed, it is often the defining characteristic that sets § 1983 claims apart from their state-law tort analogues. Deliberate indifference is essential to nearly all claims of cruel and unusual punishment, excessive force, mistreatment of medical needs, and First Amendment and due process violations. *See Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) ("*[N]egligently* inflicted harm does not amount to a constitutional violation.") (emphasis in original). Taken together, these claims comprise the vast majority of prisoner litigation in this District. If state-of-mind issues are generally beyond the ability of most pro se litigants to prove, then a court likely would need to appoint counsel in nearly every prisoner case. This is plainly impossible.

The guiding rule has always been that appointment of counsel is the exception rather than the rule in pro se prisoner litigation. Yet a confluence of all-too-common circumstances—discovery, jailhouse lawyers, and claims concerning state of mind—militate in favor of the appointment of counsel. As the list of reasons to appoint counsel grows, the reasons not to do so shrink. This District's resources have not kept pace.

Against this backdrop, the Court finds that Plaintiff has not presented sufficient evidence and argument showing that he cannot litigate or try this matter competently on his own. Plaintiff explains that he is 73

years old, and the Veteran's Administration recently diagnosed him with a "mild cognitive impairment." ECF No. 8-1 at 7. This fact certainly weighs in favor of appointing counsel. But there are also facts weighing against it. First, Plaintiff is a prodigious (and occasionally successful) litigant, who has a better-than-average grasp on both procedural rules and substantive law when compared to most pro se litigants, notwithstanding his mild cognitive impairment. Second, Plaintiff is no longer in custody, so his ability to access public law libraries and legal clinics, and to spend his time and resources litigating his cases, is unrestrained by prison policies. Finally, this matter is currently at the pleadings stage, which is less complex than discovery, motion practice, and trial. At this juncture, in this matter, the Court finds that appointment of counsel is not appropriate. This may change depending on the case's progression and any changes in Plaintiff's cognitive abilities. The Court additionally notes that Plaintiff has secured counsel in one of his appeals, which is currently pending before the Seventh Circuit. *See Shaw v. Kemper*, Case No. 21-3265 (7th Cir. 2021). It may be worthwhile for Plaintiff to explore whether this attorney could offer assistance or otherwise refer counsel.

### 3. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** An Eighth Amendment claim against Gudal for deliberate indifference to a serious medical need;

**Claim Two**: A claim against Kemper, in his official capacity as Warden of RCI, for violations of the ADA; and

**Claim Three:** A claim against Kemper, in his official capacity as Warden of RCI, for violations of the RA.

The Court will deny Plaintiff's request for counsel at this time. The Court also notes that Plaintiff's motion to appoint counsel includes a request for a protective order, though the substance of the motion is focused on the motion to appoint counsel. To the extent that Plaintiff's motion for a protective order seeks to protect the medical documents appended to his motion to appoint counsel, the Court will grant the request and order the Clerk of Court to restrict access to the documents found at ECF No. 8-1.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Accordingly,

**IT IS ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants Paul S. Kemper and Sergeant Gudal;

**IT IS FURTHER ORDERED** that under the informal service agreement, Defendants shall file a responsive pleading to the complaint within 60 days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service or this affirmative defense is waived;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 7, be and the same is hereby **DENIED**; however, to the extent Plaintiff seeks to restrict access to his medical records, that request is

Page 14 of 16
Case 2:21-cv-00636-JPS   Filed 05/23/22   Page 14 of 16   Document 9

**GRANTED**; the Clerk of Court is ordered to restrict access to ECF No. 8-1 to protect Plaintiff's medical records; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 23rd day of May, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.